HENRY A. CALLIS *vs.* FRANCIS TOLSON's EX'rs.—*June,* 1834.

To disqualify a witness on the ground of interest, the party objecting to his competency must show the disqualifying interest.

The widow of a deceased testator, who had renounced, in a contract with the executors of the deceased, her rights in the real and personal estate of the deceased, and agreed to accept compensation from such executors for such renunciation, is a competent witness in an action of replevin, brought by the executors for a negro, to prove, that such negro was loaned to the defendant many years before by her husband, who had declared he never would give the slave in question to the defendant, or any of his family; the will of the testator not being in evidence, nor it appearing to the court, that the witness had any special interest in such slave, and the contract with the executors being personal to them, and not binding the assets of the estate.

Callis *vs.* Tolson,s Ex'rs.—1834.

When property replevied, was loaned to the defendant by the plaintiff, and held and used by him under and in virtue of such loan, though for more than three years before the suit was instituted, such possession does not sustain the plea of the act of limitations. The principle in such case is the same as in a contract of hiring.

The right of a plaintiff to recover property is not barred by the possession of the defendant, accompanied by a claim of title to the property, for more than three years before the institution of the suit, if the possession was originally acquired by loan, and the plaintiff had no knowledge of the adversary claim of the defendant, three years before the suit was brought.

APPEAL from *Prince Georges* county court.

This was an action of replevin for four negroes; a woman and three boys, commenced by the appellees as the executors of *Francis Tolson,* against the appellant on the 8th of March, 1831.

The defendant pleaded property in himself, and the act of limitations, to which there were issues.

1. At the trial the plaintiffs proved themselves to be the executors of *Francis Tolson,* and then offered to prove by the widow of the deceased, that the negro woman in the declaration mentioned, was originally the slave of said deceased, and was sent by him about nineteen or twenty years ago to the house of the defendant, who had married a daughter of their testator, for the purpose of attending on the defendant's wife and child, and that the said testator had repeatedly declared, that he had not given, and never would give, the said slave to the defendant or any of his family.

The defendant objected to the competency of this witness on the ground that her testimony was not admissible to shew a title in the plaintiffs as the executors of her husband to the said slave, because as his widow she had a direct interest in establishing such a title, it being in proof by the following agreement, that she had renounced her right under his will. "Memorandum of an agreement made and enterd into this 18th day of January, 1825, between *Margaret B. Tolson* widow of *Francis Tolson* deceased, of the one part, and *Henry Tolson, William Tolson,* and *Alfred Tolson,*

executors of the said *Francis Tolson*, of the other part; whereas, the said *Margaret* conceives the provision made for her in the will of her husband insufficient for her reasonable support, and is determined not to abide thereby, but to renounce the provisions made for her therein, and to elect in lieu thereof, to take her dower or thirds of the real and personal estate of her said husband; and the parties to these presents believing that many things intended by the said *Francis Tolson* to be done at the expense of his estate for the comfortable maintenance of his wife, is either not expressed in his will at all, or not with such precision as to give on the one hand to the said *Margaret* a legal right to demand, or to afford on the other a legal authority to the executors to furnish them ; now for remedy thereof, and to settle the rights and interests of the parties to this agreement, as of all others concerned, in an amicable manner, the said *Margaret* being unwilling to disturb the disposition of his estate made by her said husband, further than is necessary to ensure a comfortable maintenance, these presents witness ; that the said *Margaret*, for and in consideration of the premises, and also for and upon the further consideration of the stipulations hereinafter entered into by the said executors, doth hereby release, give up, and quit all claim to her dower in, or thirds of, her said husband's real and personal estate, and also to three hundred dollars *per annum*, of the five hundred dollars per year left her by the will of her said husband; and the said executors in consideration thereof, for themselves and also for and on behalf of all others having an interest in the estate of the said *Francis Tolson*, agree that the said *Margaret* shall have, enjoy and possess, all and singular the bequests, devises, legacies, and immunities given to her, in and by the said will of her late husband, in the same full and ample manner as is expressed therein, except the three hundred dollars per annum above relinquished by the said *Margaret*, and in addition thereto, agree in like manner to pay the said *Margaret*, yearly and and every year, two hundred dollars of the five hundred

dollars per annum bequeathed to her as aforesaid, and also to pay in a reasonable time to *Eleanor C. Tolson* and *Margaret Tolson*, the daughters of the said *Margaret*, (the widow) the sum of one thousand dollars each, in addition to the sum willed them by their father; and further agree to supply, for and during the life of the said *Margaret*, the house comfortably with eating, drinking, &c. and the usual necessaries for such a family; and the said executors in like manner further agree, that they will pay the necessary physician's bills for the family, &c. of *Mrs. Tolson*, all of which stipulations are to be performed at the expense of the said estate. Signed and sealed by the parties." And the plaintiffs insisted, that the aforesaid agreement rendered her a competent witness for them in this action, and the court (STEPHEN, Ch. J., and KEY, A. J.) being of that opinion, she was examined accordingly. The defendant excepted.

2. The plaintiffs further proved, that about nineteen years ago the negro woman in the pleadings mentioned, was the property of the testator, *Francis Tolson*, and was by him about that time loaned to the defendant, as a nurse to the testator's grand-child, and the testator then declared that he would loan, but would not give her to the defendant. The defendant then proved, that the property in question had been for nineteen years in his possession, and claimed by him as his own.

Upon this proof, the plaintiffs' counsel prayed the court to instruct the jury, that if they believed the property in the pleadings mentioned was loaned to the defendant by the plaintiffs' testator, that the plaintiffs were entitled to recover, although more than three years had elapsed since the possession of the defendant, unless the testator or plaintiffs knew that the defendant claimed the property adversarily, for more than three years before the commencement of this suit. The court gave this opinion; the defendant excepted; and the verdict and judgment being against him, he brought the record upon appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and ARCHER, and DORSEY, J.

*Stonestreet*, for the appellant, contended.

1. That the widow was not a competent witness.  The contract between her and the executors was not such as they were authorised to make.  Notwithstanding the contract, the widow was at liberty to claim her proportion of the estate, and as she was not bound it could not be binding on the executors.  If however the contract was a valid one, still, as the ability of the executors to perform its stipulations depended on the value of the estate, the widow was not a good witness.  She was swearing to swell the fund out of which she was to be paid.

2. Upon this exception he insisted, that the court erred in instructing the jury, "that if from the evidence they should believe, *the property in the pleading mentioned,* was loaned to the defendant by the testator of the plaintiffs, that they were entitled to recover."   Because there was no proof before the jury, that three of the four negroes in the declaration mentioned, were the property at any time of the testator, or were ever loaned by him to the defendant: where there is no evidence, it is errror to submit the fact to the jury.    4 *Gill and Johns.* 376.

*Pratt* and *Duckett*, for the appellees.

The record legitimately presents but two questions for the consideration of this court.

1. Was the county court right, in permitting *Margaret B. Tolson* to give testimony to the jury, in opposition to the prayer of the appellants?

2. Was the county court right in their instruction to the jury, "that if from the evidence they should believe that the property in the pleadings mentioned, was loaned to the defendant by the plaintiffs' testator, that the plaintiffs were entitled to recover, although more than three years had elapsed since the possession of the defendant, and his claim

of title hereto began before the institution of this suit; un-
less the plaintiff or testator knew that the defendant claim-
ed adversary title to the property for more than three years
before the commencement of the suit."

A third question which does not appear by the record to
have been raised in the court below, and which, conse-
quently, it is contended, since the act of 1825, ch. 117,
cannot be noticed by the appellate court, is, that the instruc-
tion of the court to the jury, in the second bill of exceptions,
based upon the prayer of the appellees, as set forth in that
bill of exceptions, is *defective and erroneous,* because the
intruction as granted is *general,* applying to all the proper-
ty claimed in the action, when it should have been *restrict-
ed exclusively* to negro woman *Kitty;* there being no proof
in the record to show that either of the other negroes, claim-
ed in the action and covered by the verdict, were ever ex-
pressly loaned to the appellant, or were in fact, the issue
of negro *Kitty, born* of her *while* in the fiduciary possession
of the appellant.

The act of 1825, *ch.* 117, occludes the point from the ju-
dicial cognizance of this court. But if the examination of
the point be not inhibited by legislative enactments, still the
decision of the court should not be reversed, (if in principle
correct) merely because the whole evidence is not stated by
the appellant in his bill of exceptions; *more especially* as
there is no affirmative proof, that the necessary evidence,
although not patent in the record, was not in fact delivered
to the jury; and since a presumption of its total absence
upon the trial, affixes an inordinate degree of folly not only
upon the court, who gave the instruction, but the jury who
rendered the verdict.

The first of the two points *really* raised by the record,
will be adverted to and briefly considered, to wit : was the
court below right, in refusing to grant the prayer of the
appellant, that *Margaret B. Tolson's* testimony was not ad-
missible to show title in the plaintiffs' and executors of her
said husband to the said slave; because, *as his widow,* she

had a direct interest in establishing such a title, it being in in proof that she had renounced her rights under his will?" The prayer, alleging that she had renounced under the will, and consequently become substituted to her rights under the law, *her rights as widow,* desired the court to reject her testimony, because *as widow* she had a direct interest in increasing the fund in the hands of the executors, which would be for distribution among the distributees of the testator, of which she was one. The prayer did not seek her rejection upon the ground of any other interest which she had in the estate of her husband, than *as widow.* *That* was the *only* interest requiring her rejection; which was suggested by the prayer to the court. If her interest *as widow* was not found to exist, there was no foundation exhibited to the court by the prayer, upon which her rejection as witness could be predicated. The prayer by attacking her competency, upon the allegation of an interest of a particular character, *concedes necessarily,* if that interest either does not exist, or forms no barrier to her testifying in the cause, she has no other legal interest in the controversy which could render her incompetent as a witness. The inquiry then is, had she *as widow* any interest in the personal estate of her husband at the time the prayer in question was submitted. She undoubtedly had, after her renunciation of the will, unless she had before the trial by some act of her own parted with it? This it is contended, she expressly did, by an instrument of writing, signed and sealed by her, of date the 18th Jan. 1825, and which was produced in evidence both by the plaintiffs and defendants below. In which instrument she uses the following strong and unequivocal language, conclusively proving that she had released all her rights *as widow.* "Doth hereby release, give up, and quit all claims to her dower in or thirds of her said husband's real and personal estate." It was said in argument that *Henry, William* and *Alfred Tolson,* who are the appellees here, and with whom she contracted in the instrument in question, gave her no valuable consid-

eration, and therefore the release is void. The answer is brief, but irresistible. The release is under seal. It therefore necessarily imports a consideration, and is conclusive upon her.

2. But concede for the sake of the argument that it is hypercritical and unsound. Concede that it was the duty of the court to have rejected the witness upon the prayer of the appellant, notwithstanding it proved she had no legal interest *as widow;* provided, it satisfactorily appeared in proof she had an interest in the estate of *Francis Tolson,* which in a legal point of view constituted a barrier to the reception of her testimony in the cause. Had she any such interest? If she had she must have acquired it under her contract of the 18th of Jan. 1825, with *Henry, William* and *Alfred Tolson.* Although the above named individuals in the body of the instrument describe themselves as the executors of *Francis Tolson,* they sign and seal it as individuals, without annexing to their respective names any *descriptio personæ.* If they have attempted to bind the estate of their testator, their attempt is vain. They possess no such power. A suit against them upon the contract if it result in a judgment, must result in a judgment *de bonis propriis, and not de bonis testatoris.* The authorities are abundant and uncontradictory on the subject. 2 *Wms. on Exec.* 1093. *Hosier vs. Lord Arundle,* 3 *Boss. and Pull.* 7. *Jennings vs. Newman,* 4 *Term. Rep.* 347. *Barry vs. Rush,* 1 *Term. Rep.* 691. *Rose vs. Bowler,* 1 *Hen. Black,* 108. *Brigden vs. Parks,* 4 *Boss. and Pull.* 424. *Curtis' Executors vs. Bank of Somerset,* 7 *Harr. and Johns.* 25.

It is therefore most apparent upon the foregoing authorities, that the executors had no power by contract to bind the estate of their testator for the payment of the stipulations specified in their agreement of the 18th of January, 1825.

3. But further, concede for the sake of the argument, that the executors did possess the power to bind the estate of their testator, and give the widow an interest in that estate, different from her interest *as widow,* which it seems

she had expressly released. What was the character of that interest? And was it such an interest as constituted a legal ground for the rejection of her testimony upon the trial? Her interest was that of a general creditor of the estate, and none other. She had no *interest* in the residue *as residue;* which was to be increased or diminished, in exact proportion to the enhancement or diminution of that residue. It was a certain interest in the estate, which, provided the estate was solvent, was not to be magnified by reason of its wealth. The interest which alone will exclude a witness is not a doubtful, remote and future, but a certain, immediate, legal interest in the cause depending. It must be a vested interest in the result of the cause; not an uncertain or contingent one. To have rendered her interest certain and not doubtful, the insolvency of the estate should have been proved; but it was neither proved nor alleged. The agreement of the executors *as to them* is conclusive as to the solvency of the estate; and by the court in the absence of proof or allegation to the contrary, should have been regarded as *prima facie* evidence of such a condition. The allegation of *interest* in the witness, amounting to legal disqualification to testify, came from the defendants. It was therefore incumbent upon them to prove it. It could only have been proved by proof of the estate's insolvency, of which there was none. The propositions laid down under the last branch of the argument, will be found amply sustained by the following authorities. 2 *Stark. on Ev.* 744, 745, 746. *Swift on Ev.* 58. *Henry vs. Morgan,* 2 *Binney,* 497. *Bower vs. Kendall,* 14 *Serg. and Rawle,* 178. *Baines vs. Katch,* 3 *New Hampshire Rep.* 304. *Hillhouse vs. Smith,* 4 *Day's Rep.* 432. *Green's Case,* 2 *Dallas,* 50. *Paull vs. Sutton,* 6 *Esp. Rep.* 34. 1 *Camp.* 381. *Carter vs. Pearce,* 1 *Term. Rep.* 163. *Owens vs. Collinson,* 3 *Gill and Johns.* 25. *Barry vs. Rush,* 1 *Term. Rep.* 692.

4. But concede for the sake of the argument, that *Margaret B. Tolson* was an incompetent witness, and should

have been rejected, still, if the court below were right in their instruction in the second bill of exceptions, *procedendo* ought to issue; because the appellants in their second bill of exceptions, expressly admit that the plaintiffs below proved upon the trial "by a legal and competent witness," the very facts which they proposed to prove by *Margaret B. Tolson*—and *non constat* by the record that, that "legal and competent witness" was *Margaret B. Tolson*. In *Morgan vs. Morgan, 4 Gill and Johns.* 495, this court have said, that where they "believe the plaintiff can recover nothing, they will not award a *procedendo;* though they reverse the judgment of the county court rendered in favour of the defendant," they will not therefore in this case award a *procedendo,* because the county court were wrong in permitting *Margaret B. Tolson* to testify for the plaintiffs, the defendants conceding the production upon the trial of the same testimony given *by her,* through the medium of an unexceptionable witness.

*Secondly.* As to the instruction of the court below, in the second bill of exceptions, the general principle embraced in it, if not expressly granted by the counsel of the appellant, was certainly not expressly denied by him. The general principle of the decision may be stated to be, that the relation of trustee and *cestui que trust* having been satisfactorily established to have once existed between the defendant and plaintiff in regard to the subject matter of the suit—so long as that relation continues, length of time is no bar to the action instituted by the *cestui que trust* to recover the possession of the trust property. That so long as property loaned remains in the possession of the bailee, the statute of limitations is no bar to the recovery of the bailor, unless the bailee has set up an adversary claim to the property for more than three years before suit brought; of which the bailor was cognizant, and which he acquiesced, either expressly or impliedly. We contend that the trustee or bailee cannot by his simple declaration convert his fiduciary into an adversary possession. That until his pos-

session does become adversary to that of the bailor or trus-
tee, (which can only be by demand and refusal) the statute
of limitations does not begin to run—that until such demand
and refusal, the possession of the trustee is in fact the pos-
session of the *cestui que trust.* See the following authori-
ties. *Redwood vs. Riddick,* 4 *Mun.* 222. *Gist vs. Cattle,*
2 *Dess.* 53. *Hutchinson vs. Hutchinson,* 4 *Dess.* 77. *John-
son vs. Humphreys,* 14 *Searg. and Rawle,* 394. *Ward vs.
Reeder,* 2 *Harr. and McHen.* 145. *Fishwicke vs. Sewell,*
4 *Harr. and Johns.* 430. *Ballantine on Lim. Appendix
A.* 357, *et sequentibus.*

BUCHANAN, Ch. J., delivered the opinion of the court.

The suit is in replevin by the executors of *Francis Tol-
son,* for certain negroes named and described in the writ,
as the mother and her three children, to which there are
three pleas; property in the defendant; *non cepit* within
three years, &c.; and *actio non accrevit* within three
years, &c.

At the trial the plaintiffs offered to prove by the widow
of *Francis Tolson,* that the woman named in the declara-
tion was originally the slave of the deceased, and was, about
nineteen or twenty years before, sent by him to the house
of the defendant, who had married his daughter, for the
purpose of attending on his wife and child, which was per-
mitted by the court: and the objection raised on the first
bill of exception is, that *Mrs. Tolson* was an incompetent
witness to prove a title in the plaintiffs, the executors of
*Francis Tolson,* to the negro woman, on the ground, that
being the widow of the deceased, and having renounced all
right under his will, she had a direct interest in establish-
ing such a title; and in support of that proposition the con-
tract under seal entered into between her and the plaintiff's,
which is set out in the bill of exceptions, is relied upon.
But we cannot perceive what aid is brought to the objec-
tion to *Mrs. Tolson's* competency by the contract so in-
voked.

By that contract, in consideration of difficulties attending the construction of the will of *Francis Tolson*, of a mutual wish to settle the rights and interests of all concerned in an amicable manner; of the unwillingness of *Mrs. Tolson* to disturb the dispositions made by her husband of his estate, further than was necessary to secure to her a comfortable maintenance, and of the stipulations on the part of the plaintiffs, she in terms, *releases, gives up, and quits all claim to her dower in, or thirds of, her husband's real and personal estate,* and also to three hundred dollars per annum, of five hundred dollars per annum bequeathed to her in the will: and the plaintiffs on their part among other things, contract to pay her the other two hundred dollars, and that she shall possess and enjoy all the bequests, devises, legacies, and immunities given her by the will, except the three hundred dollars relinquished by her.

What direct interest then had she in establishing the title of the plaintiffs to the negro woman, to whom her testimony relates? The will itself is not in the record, and does not appear, and there is nothing to show that the negro woman was bequeathed to her, or what, if any, disposition was made of her. She may for any thing that appears have been bequeathed to somebody else, and to disqualify a witness on the ground of interest, the party objecting to his competency must show that disqualifying interest, which has not been done here. On the contrary, the instrument relied upon shows that the witness objected to had no such interest as the widow of *Francis Tolson.* By that very contract she had abandoned all right and claim to dower in, or the thirds of, her deceased husband's real and personal estate, reserving only a claim to two out of the five hundred dollars per annum bequeathed to her; and for that and the enjoyment stipulated by the plaintiffs, of the other bequests and devises to her in the will, she had taken their responsibility upon their contract, and could not disturb any disposition by them of the residue of the estate. That contract is the personal contract of the plaintiffs, binding

only upon them in their individual capacity, and she could have no recovery against them for a violation of it, to bind the assets of their testator.   Nor does there appear to have been any deficiency of assets.   On the contrary, the contract amounts to an admission of assets; and therefore, as far as appears to us, she was not disqualified as a witness in this case, by any claim that she may have to the two hundred dollars under the will of *Francis Tolson*, against his executors as such.

As to the pleas of the statute of limitations, it is perfectly clear, that if, as is contended, the property mentioned in the declaration was in truth loaned to the defendant, by the testator of the plaintiffs, and held and used by him under and in virtue of such loan, though for more than three years before the suit was instituted, such possession could not have the effect to bar the recovery sought by the plaintiffs.   As well might it be said that possession for more than three years before the bringing of the suit under a a contract of hiring, would operate as a bar under the statute of limitations.   The principle is the same.   Nor would the right of the plaintiffs to recover be barred by the possession of the defendant, accompanied by a claim of title to the property for more than three years before the institution of the suit, if the possession was originally acquired by loan from the testator, and neither he nor the plaintiffs had a knowledge of the adversary claim of the title of the defendant three years before the suit was brought; and it is presumed, that the court below only intended to have expressed its opinion, in relation to the operation of the act of limitations upon a possession acquired by loan, or permission, and not originally adverse in the hypothetical opinion and direction to the jury, that the plaintiffs were entitled to recover the property mentioned in the pleadings. In which opinion as an abstract proposition we concur, but perceive no evidence in the record to justify the direction given to the jury, to the extent it goes.   The only evidence in the record on the part of the plaintiffs is, that the negro

woman was the property of the testator, *Francis Tolson*, and was loaned by him to the defendant about nineteen years ago, as a nurse to his child, with no proof of knowledge by the testator or the plaintiffs, of any claim of title by the defendant. To a possession so acquired and held, the act of limitations does not attach. But the direction of the court goes further, and embraces all the other negroes named in the proceedings, who are not only not proved to be the children of the woman, of whom the evidence is, that she was the property of the testator, and was loaned by him to the defendant; but there is not a word of evidence in the record, that either of them was ever owned by the testator, or loaned by him to the defendant; and in the absence of all such proof, with the evidence set out in the record, that they had been in the possession of the defendant, who claimed them as his own, for about nineteen years, and the testimony in relation to the woman also stated in the bill of exceptions, we must take it, that there was no other proof in the cause; and then, the hypothetical direction to the jury, that the plaintiffs were entitled to recover them if they believed they had been loaned to the defendant by the testator, &c. would appear to have been given not only without any evidence to support or justify it, but in the very face of the evidence on the part of the defendant, which standing alone and uncontradicted as it does in the record, in relation to all the negroes except the woman, furnishes a complete defence to the claim set up by the plaintiffs to the others.

We do not therefore concur in the opinion and direction expressed in the second bill of exceptions, and must for that reason reverse the judgment.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**