BARBARA E. HUME, ET AL., *vs.* JOHN K. PUMPHREY.—*December* 1846.

In the year 1826, the owner of a negro slave conveyed her in trust for the sole and exclusive use of his daughter, during the time she may live and remain unmarried, or for life; and after her death or marriage, until such time as the eldest of her children shall come of age or be married, on which event the trustee was directed to convey the same absolutely unto the children of the grantor's daughter. The mother married again in 1842; and in 1844, the trustee conveyed the property to the grand-children. In an action of *trover* for the slave, brought by the grand-children a few days after the conveyance to them, and after demand and refusal, the defendant proved, that he had been in possession of the slave some five or six years, using and claiming her as his own, and that the trustee was frequently in the county where the defendant resided during that time. HELD, that this case was within that class of cases, where not only adverse possession and claim of title for the time limited by the act of Assembly, are necessary to bar the plaintiff's recovery, but it must be made appear to the jury, that such adverse possession and claim of the defendant, were known to the trustee three years before the institution of the suit.

Where a slave was conveyed in trust for the use of *A*, for life, and after her death the trustee was directed to convey the same to *B*, and neither the trustee, nor *B*, were entitled to the possession during the life of *A*, there can be no presumption of knowledge on the part of the trustee, that the claim or possession of another party claiming under *A*, was adverse to his right.

The defendant, by his examination of a witness in chief, proved, that the witness, as a constable, had sold the negro in controversy to him, and so in effect gave evidence of a sale under a *fi. fa.*, or some process of execution. Under such circumstances the plaintiff, by cross-examination of the

same witness, will be permitted to give parol evidence of the undisclosed part of the contents of the *fieri facias*.

Appeal from *Prince George's* county court.

This was an action of *trover*, brought by the appellants against the appellee, on the 28th March 1844, for a negro woman called *Mary*, a slave for life. The defendants pleaded *non cul*, and limitations. The verdict was for the defendant.

In the trial of this cause, the plaintiffs to support the issues on their part, offered in evidence the deed from *Benjamin Berry* to *R. Beale*, as follows, to wit:

"This Indenture, made this 14th March 1826, between *Benjamin Berry*, of *Prince George's* county, *Maryland*, of the first part, and *Robert Beale*, of the city of *Washington* and *District of Columbia*, of the second part, and *Eleanor Berry*, the daughter-in-law of the said *Benjamin Berry*, and *Barbara Ellen Berry*, *Amanda Eugenia Berry*, and *Russia Rosalia Berry*, daughters of the said *Eleanor Berry*, and grand-children of the said *Benjamin Berry*, all of *Prince George's* county, of the third part, witnesseth, that whereas the said *Benjamin* is anxious to provide for the support and maintenance of his said daughter-in-law, and his said grand-children, (for which they are dependent on him, the said *Benjamin Berry*,) that is to say, for his said daughter-in-law, so long as she shall remain a widow and unmarried, and for his said grand-children, and their heirs, forever. Now this indenture witnesseth, that the said *Benjamin*, for, &c., hath given, &c., and by these presents do give, &c., unto the said ———, his heirs and assigns, all that tract or parcel of land, &c., together with all the negro slaves, &c., their increase, &c., all of which will more fully appear by the schedule hereunto annexed, marked A, situate, being and employed upon, and esteemed and taken as belonging to the said tract or parcel of land, and capital messuage; also a little negro boy named *Lemuel*, which lives upon the land where the said *Benjamin Berry* now lives, in trust, however, for the following purposes, and no other use, that is to say, that the said *Robert Beale* shall retain the legal title to all the said property, during the life and widowhood of the said *Eleanor Berry*, and after her death or marriage, until

such time as the eldest of her children shall come of age or be married, on which event or events, the said *Robert Beale* shall convey the unconditional title in fee to all the said property, both real and personal, unto the said children, and their heirs, or such of them as may be living at the time of such convey- ance, and to the issue of any of such as may be dead, such issue to take under said conveyance in the same manner that they would take under the statute of distributions, in case the property were to be descended from an ancestor, dying at the time when such conveyance may and ought to be made; and the said *Robert Beale* shall permit the said *Eleanor Berry* to have and enjoy the sole and exclusive use of all the said pro- perty, for and during the time in which she shall and may live and remain unmarried. In witness whereof, the aforesaid parties of the first and second part have hereunto set their hands and seals, the day and year first above written.''

"A.—A schedule of the property as far as it can be remem- bered and referred to in the annexed deed, and called for as the property marked A: five negro men, viz., &c.; eleven negro women, *Mary*," &c.

And proved, that negro *Mary*, the property in controversy, was the property originally of *Benjamin Berry*, grantor in the above deed, and the same negro *Mary* named in the schedule thereof; they further proved the marriage of *Eleanor Berry*, to whom the estate in the property mentioned in the said deed was given during widowhood, to have taken place in October 1842, and that the plaintiffs in this case were the parties named in the said deed to whom the said property, in the event of the death or marriage of the said *Eleanor*, was to belong; and further gave in evidence the deed of *Robert Beale*, to the plaintiffs in this case, in 1844, for the property in question. And that before suit brought, the plaintiffs demanded the said negro in controversy, and the defendant refused to deliver her up.

The defendant then proved by competent witnesses, that he had been in possession of the said negro since 1838 or 1839, using and claiming her as his own, and that *R. Beale*, the trustee mentioned in the deed, was frequently in the county.

between that date and the institution of this suit; and prayed the court to instruct the jury, that if they find from the evidence that the defendant in this case had possession of the said slave in controversy, for more than three years next before the institution of this suit, using and claiming her as his own, then the plaintiffs were not entitled to recover; which opinion the court, (MAGRUDER, C. J.,) gave. The plaintiffs excepted.

2ND EXCEPTION. After the preceding exception had been taken, (the testimony in which it is agreed shall be taken as part of this,) the plaintiffs, in further support of the issues on their part joined, offered to prove by the cross-examination of *John R. Walker*, (who had been examined by the defendant, and who had stated, in answer to the defendant's interrogatory, that he had sold the said negro *Mary*, as constable, in the year 1837, to one *John T. Berry*, who had sold her to the defendant in 1838;) that said sale to *Berry* was made under a writ of *fieri facias*, in his hands, as constable, against the goods and chattels of *Eleanor Berry*, mentioned in the said deed, and that said defendant claims title to said negro, under his purchase from said *John T. Berry;* but the defendant's counsel objected to the evidence: the court, (MAGRUDER, C. J.,) sustained the objection, being of opinion that it was not competent to the plaintiffs to establish, by parol proof, any sale of said slave, in virtue of a *fieri facias*, without producing the said writ, or showing that it was not in his power to produce the same, although he had taken the steps required by law to enable him to produce it, or without accounting for the non-production of said *fi. fa.* To this opinion of the court, and their refusal to permit the testimony to go to the jury, the plaintiffs excepted.

The plaintiffs appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MARTIN, J.

By TUCK and DIGGES for the appellants, and
By C. C. MAGRUDER for the appellee.

DORSEY, J., delivered the opinion of this court.

The plaintiffs having proved their title to the negro slave, for the conversion whereof the present action of *trover* was instituted, and a demand and refusal before the institution of their suit, the defendant then proved, that he had been in possession of the said negro since 1838 or 1839, using and claiming her as his own; and thereupon prayed the court to instruct the jury, "that if they found from the evidence, that the defendant in this case, had possession of the slave in controversy for more than three years, next before the institution of this suit, using and claiming her as his own, then the plaintiffs were not entitled to recover." Which instruction the court gave, and the propriety of their having done so, forms the subject of appeal on the first bill of exceptions.

Whether a plaintiff, having both the right to the property and to its possession, during the period of such claim, user and possession, by a defendant, could successfully resist such a prayer as that made by the present defendant, which excludes from the consideration of the jury all enquiry as to the knowledge of the plaintiff, of such possession, user and claim, is a question upon which it is unnecessary, and therefore not intended by us, to express any opinion.

In this case, until within less than two years before the institution of this suit, neither the present plaintiffs, nor *Robert Beale*, the trustee, under whose conveyance they acquired their legal title, had any right to the possession of the negro in controversy. By the express terms of the deed of trust from *Benjamin Berry*, *Eleanor Berry* was "to have and enjoy the sole and exclusive use of all the said property, for and during the time in which she shall and may live and remain unmarried, without molestation or hindrance" of the said trustee. *Eleanor Berry's* interest in the property conveyed, terminated, by her marriage, in 1842, until when, *Beale*, the trustee, unless informed to the contrary, might naturally conclude, that the negro girl *Mary* remained in the possession of *Eleanor Berry*, or those rightfully claiming under her. A possession in another person, adversary to her rights or his own, he had no reason to anticipate, and his knowledge thereof, without proof, is not to

24    v.4

be presumed. The facts submitted to the finding of the jury by the defendant's instruction, as granted by the court, might all be true, and yet not be any invasion of the possessory rights of the trustee, for which he could seek any legal redress. The defendant may have acquired, by purchase, the usufructuary possessive right of *Eleanor Berry*, and in virtue of such title, possessed, used, and claimed, negro *Mary* as his own. This case, therefore, falls clearly within that class of cases, where not only adverse possession and claim of title, for the time limited by the act of Assembly, are necessary to bar the plaintiff's recovery, but it must be made appear to the jury, that such adverse possession and claim of the defendant, were known to *Robert Beale,* the trustee of the plaintiffs, three years before the institution of this suit. It hence follows, that the county court erred in instructing the jury, as they in effect did, that three years possession of negro *Mary,* by the defendant using and claiming her as his own, before the commencement of the action, barred the plaintiff's recovery, whether their trustee had knowledge of such possession, user, and claim, or not.

In rejecting the testimony offered by the plaintiff's cross-examination of the defendant's witness, *John R. Walker,* as stated in the second bill of exceptions, we think the court below also erred. The defendant, by his examination of the witness in chief, having proved, that he, (the witness,) as constable, had sold negro *Mary* to *John T. Berry,* in 1837, who, in 1838, sold her to the defendant, thereby, in effect, gave evidence to the jury, that such sale was made under a *fieri facias,* or some process of execution. The plaintiffs, thus suddenly apprised of the existence of a written paper,—of which we cannot assume that they had any previous knowledge; or had then any means of producing; or had any reason to expect its being in any way referred to at the trial, and its contents partially given in evidence to the jury, and relied on by the defendant,—could not be expected to have taken the requisite steps to prove its contents, according to the strict requirements of law; or to enforce its production by a *subpœna duces tecum;* or if lost, destroyed or mislaid; or if in the possession of the defendant, to have laid a proper foundation for the proof of its contents by

secondary evidences, and therefore, as well upon principles of reason and justice, as of law, ought to have been permitted to give in evidence the undisclosed part of the contents of the *fieri facias*, by the same kind of testimony that the disclosed portion of the contents of the writ had, already by the defendant, been laid before the jury. Surprise and injustice would be the result, if a different principle were to prevail in many cases, in some respects similarly circumstanced. We dissent, therefore, from the county court's opinion, and refusal to permit the testimony offered by the plaintiff's cross-examination of the witness to go to the jury, as stated in the second bill of exceptions.

Dissenting from the county court on both bills of exceptions, their judgment is reversed. Let a procedendo issue.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.