JAMES B. BELT, ADM'R OF WALTER S. CLARKE, *vs.* JONA-
THAN MARRIOTT, ADM'R OF WM. MARRIOTT, of THOS.—
*December* 1850.

The legal sufficiency of evidence in a question of law of which the court
are the exclusive judges.

Wherever testimony is so light and inconclusive that no rational well con-
structed mind can infer from it the fact which it is offered to establish, it is
the duty of the court when applied to for that purpose, to instruct the
jury that there is no evidence before them to warrant their finding the fact
thus attempted to be proved.

Proof was offered that a certain *R. P.*, claiming to act as trustee, employed
witness to sell all the estate of *Walter Clarke*, and that at the sale he sold
the negro woman *Jemima*, to *Caleb*, the brother of said *Walter*, and that
*Walter* there delivered the woman to *Caleb*. The witness does not know
what was bid for the woman, or whether the money so bid was ever paid ;
that the woman was never out of possession of *Walter*, except as stated,
but continued in his possession to his death, and afterwards with his
widow. HELD :

That this testimony was not sufficient to justify the inference that there was
a sale of the negro woman in question from *Walter* to *Caleb Clarke*, and
that it was error to permit it to go to the jury for that purpose.

This evidence might have led to the conclusion that *Walter*, standing by
and remaining silent while the auctioneer, by direction of *R. P.*, was sell-
ing the negro, thus forfeited his title to his brother, provided the latter
had, at the time, taken possession, or had ever afterwards claimed the
property,

The question of sale or no sale is a question of law, and is not to be decided
by the opinions of witnesses : it is also a question of law what shall be
deemed a delivery upon the sale of goods.

Every contract obligatory, ought to have a *quid pro quo*, and payment
ought to be made on the delivery of the goods, except when a future day
is agreed on.

There must be a delivery of the goods with intent to vest the right of posses-
sion in the vendee, and there *must be an actual acceptance by the latter*,
with intent to take possession as owner.

An instruction which permits the jury to construe the provisions of an act
of Assembly, is erroneous : it is the province of the court to do this.

Where the title to a negro accrues by forfeiture under the act of 1817, ch.
112, notice or knowledge to the reversioner is not necessary in order to
bar his claim by the right of possession.

In an action of *trover*, limitations begin to run from the conversion, unless
the plaintiff be prevented by the fraud of the defendant from obtaining

knowledge of it; if there is no fraud, the fact that the plaintiff was igno-
rant of the conversion, will not prevent the running of the statute.

Where the owner of a slave for life transfers to a vendee an interest for a
term of years in the negro, such a disposition of a slave for life, is not
within the provisions or the spirit of the act of 1817, ch. 112.

APPEAL from *Anne Arundel* county court.

This was an action of replevin brought by the appellant, as
administrator of *Walter Clarke,* for a negro boy named *Hen-
derson.*   The pleas were *non cepit,* property in the defendant,
and property in a stranger.   The facts of the case and the ex-
ceptions, are all fully stated in the opinion.   The verdict and
judgment was for the defendant, and the plaintiff appealed.

The cause was argued before SPENCE, MAGRUDER, MARTIN
and FRICK, J.

By PRATT, for the appellant, and
WM. H. G. DORSEY and A. RANDALL, for the appellee.

FRICK, J., delivered the opinion of this court.

On the 12th of January, 1820, *William Marriott,* the ap-
pellee's intestate, being the owner of a negro woman named
*Jemima,* by bill of sale duly executed and recorded, transfer-
red and delivered the said negro woman to *Walter S. Clarke,*
to serve for the term of ten years from the date, and the chil-
dren of said *Jemima,* if boys, born during the said term, to
serve until the age of thirty years.   The boy in question in
this suit, was born in 1833, and during the said period of the
mother's servitude.

*Walter Clarke* died in the year 1826.

The appellees offered in proof in the court below, that about
eighteen months before his death, a certain *Richard Peach,*
claiming to act as trustee. employed as auctioneer, the witness,
to sell all the estate of *Walter Clarke;* and that he sold at
said sale the said negro woman *Jemima,* to *Caleb,* the brother
of said *Walter,* and that *Walter* there delivered the woman to

*Caleb.* The witness does not know what was bid for the woman, or whether the money so bid was ever paid; and further states that the woman was never out of the possession of *Walter Clarke*, *except as stated*, but she continued in his possession up to the period of his death; and afterwards with his widow, until after the birth of the boy, who, at the age of two or three years, was, from the proof, still in the possession of the widow.

On this state of facts, the defendant prayed the court to instruct the jury: 1st. "That if they find from the evidence that negro *Jemima* was sold by the said *Walter S. Clarke* to the said *Caleb Clarke*, as the defendant has endeavored to prove, then the right of said *Caleb Clarke*, as purchaser could not be avoided in this action by proof, if believed by the jury, that the said sale was intended to defraud the creditors of the said *Walter S. Clarke.* 2nd. That as the said *Walter S. Clarke* claimed title to the said negro *Jemima*, under the bill of sale from *William Marriott* to the said *Walter*, that if the jury shall find that the said negro was sold and delivered by the said *Walter S. Clarke* to the said *Caleb*, as aforesaid, and that no bill of sale was given to the purchaser as required by the 3rd section of the act of 1817, ch. 112, then that the interest and estate of the said *Walter* in said negro, was thereby divested; and the right and title to said negro reverted to the said *Marriott*, unless the jury should find that the omission to give such bill of sale, was not fraudulently designed, otherwise than as against the creditors of said *Walter S. Clarke*;" which instructions the court gave, and the counsel for the plaintiff excepted.

This negro being the property of *Walter S. Clarke* in 1820, remaining in his possession until his death, and there being no ground for a presumption that *Marriott* the vendor, or any person deriving title from him, ever had possession, or set up any title to *Jemima* or her child, until the institution of this suit, it would seem that the plaintiff is entitled to the negro boy now in controversy, unless it can be shown that his intestate by his own act, lost or parted with the title thereto.

This fact, the prayers assume the jury were at liberty to find from the alleged sale to *Caleb*, predicated upon the evidence before referred to and submitted to the jury for that purpose. The question then is, had all or any of this testimony a tendency to satisfy the minds of the jury, that on the occasion spoken of by the witness, a sale of this negro was made to *Caleb Clarke*, which would have been valid, but for the provisions of the act of 1817, ch. 112.

It is the undoubted right of the jury to find all matters of fact, where evidence legally *sufficient* for the purpose is submitted to their consideration. *Davis vs. Davis and others,* 7 *H. & J.,* 136. And this legal sufficiency is a question of law of which the court are the exclusive judges. Wherever the testimony adduced by the plaintiff (and the same is true of testimony by the defendant,) "is so light and inconclusive, that no rational, well constructed mind can infer from it the fact which it is offered to establish, it is the duty of the court when applied to for that purpose, to instruct the jury that there is no evidence before them to warrant their finding the fact thus attempted to be proved." And in the case of *Cole vs. Hebb,* 7 *G. & J.,* 20, we are told, "evidence offered to a jury, has a two-fold sufficiency, a sufficiency in law and a sufficiency in fact. Of its sufficiency in law, the court when applied to for that purpose, are the exclusive judges." So in 3 *H. & J.,* 109, the then chief justice (Chase) says, "it appertains to the court to determine upon the legal sufficiency of evidence to prove a fact."

The question here would seem to be, not whether upon the occasion to which the witness refers, and after he had twice been sent for, *Walter Clarke* was anxious to sell to his brother the negro, but whether the brother was anxious or willing to become the owner *by the purchase* of him. The alleged *status* of the negro, (always in possession of the alleged vendor, and never claimed by his brother) might be used as well to establish a gift as a sale, and if so, by the act of 1763, did not pass any title to the donee. The defendant must then in order to prove a sale to *Caleb*, rely upon this so termed delivery

as the consummation of the alleged contract. The witness who proves it, was the auctioneer, and from his own testimony the jury could not infer that he was the agent of *Walter Clarke* in the premises. Neither could they learn from his testimony what was the contract on the part of *Caleb Clarke*, and when he was to become the owner and upon what terms. The witness was sent for in the name of *Peach*, claiming authority to sell all the property of *Walter* "as trustee," although for what purpose, and when and how appointed, is not stated.

A contract we are told is a *"mutual* assent of two or more persons competent to contract, founded on a sufficient and legal motive, inducement or consideration to perform some legal act, or omit to do anything, the performance of which is not enjoined by law." *Chitty on Contracts, p.* 8. 1 *Com. Dig.* (*B.* 2,) 541 Every contract obligatory ought to have a *quid pro quo,* and payment ought to be made on the delivery of the goods, except when a future day is agreed on. See *Com. Dig., title Agreement.*

"In order to satisfy the statute, there must be a delivery of the goods with intent to vest the right of possession in the vendee, and there *must be an actual acceptance by the latter,* with intent to take possession as owner." 2 *Starkie on Evidence,* 490.

If when *Walter Clarke* is supposed to have delivered, *Caleb* had taken the possession of the negro, then a sale might be presumed. But *Walter,* it is distinctly shown, retained the possession until his death, and the alleged vendee never claimed or admitted himself to be the purchaser and the owner. The alleged sale was made, not by the owner of the property, but by an auctioneer, who is unable to give any account of the terms of sale, whether for cash or credit, or what was the highest bid, (there being in fact no other person present besides *Caleb,* who was competent to bid.) In other words, this witness gives us not the slightest clue to the contract, which was thus to be consummated by this alleged delivery of the property.

For what purpose this proof was offered is not distinctly stated. It is presumed, that it was not designed thereby to prove that the title of the negro was in *Peach*. And if it was not, then a sale by *Peach* could not prejudice any title which *Walter Clarke* had in the negro.

It could not prove a sale by *Walter Clarke*, to his brother *Caleb*, although what the witness states, if believed by the jury, might have led them to the conclusion, that *Walter Clarke* standing by and remaining silent, while the auctioneer by direction of *Peach* was selling the negro, thus forfeited his title to his brother; provided *Caleb* had at the time taken possession, or had ever afterwards claimed the property. See 5 *Johns, Ch. Rep.*, 188.

The question of sale or no sale, is a question of law, and is not here to be decided by the assertion or construction of the auctioneer, who is to state facts which will enable the jury, under the direction of the court, to determine whether there was such a sale as is in view of the provisions of this act of 1817, or the acts of 1729, ch. 8, or 1763, ch. 13.

And so also it is a question of law, and very often a question extremely difficult to decide, what shall be deemed a delivery upon the sale of goods. 11 *Johns. Rep.*, 283. 1 *East*, 292. 1 *Taunt*, 457. Upon either of these points, the opinion of the witness, however honestly entertained, or with whatever confidence expressed, ought to have been excluded from the consideration both of the court and jury.

We are therefore of opinion, that there was error in permitting the jury under the first instruction, to find from the evidence that there was a sale from *Walter* to *Caleb Clarke*. And even if the court had been properly applied to, to give the jury the law, which it was necessary they should have, in order to decide the case, the testimony, as we have said, was not sufficient to justify the inference of a sale, which they were to find from it. Nor was there anything in the case to authorize the latter branch of this instruction. There was not a particle of evidence to show that *Walter S. Clarke* had any creditors; nor were the rights of creditors in question in the

case; and the addition was therefore calculated to mislead, instead of assisting the jury in forming their verdict.

The second instruction is, of course, liable to the same objection, that it refers to the jury to find that there was a sale from *Walter* to *Caleb Clarke*. And besides, it submits to the jury to find, when there was no evidence to authorize it, whether there was such a bill of sale as is required by the act of 1817, chap. 112. At the same time, it constitutes the jury the judges of the law of that act, the provisions of which, it was for the court to expound and interpret, and not to allow the jury to find and construe them; in all which, there was error in the county court.

In the further progress of the cause, the court afterwards instructed the jury, "that if they shall find that the interest of the said *Walter S. Clarke* in the said negro *Jemima,* was vested in the said *William Marriott*, by reason of any failure on the part of the said *Walter* and *Caleb* to comply with the requisitions of the act of 1817, such title would be barred by an adverse holding by the said *Walter*, for more than three years after the title had accrued, and after the said *Marriott* had notice of such sale and delivery, as aforesaid, and of the claim of said *Walter* to hold adversely, as aforesaid." And further, "that to create such a bar by limitations, it was incumbent on the plaintiff to show an adverse possession, as aforesaid, for upwards of three years, by the said *Walter* in his lifetime. That if he held the said negro adversely, up to the time of his death, but for a space less than three years, and if immediately after his death, his widow acquired the possession, and held said negro adversely, as aforesaid, for more than three years, then, that the possession of said *Walter*, combined with the possession of his widow, would not, in favor of the plaintiff, create in him such a title as would, in virtue thereof, entitle him to recover."

We are of opinion, that in this, also, the county court erred. It is true, that there are classes of cases, in which it has been decided that the owner must have notice, that the holding by another of property, to which the former has title, is adverse.

See the cases of *Callis vs. Tolson*, 6 *G. & J.*, 80, and *Hume vs. Pumphrey*, 4 *Gill*, 181. This, however, is not regarded as such a case, and very great mischief would arise from so considering it. The reversioner is not necessarily entitled to the negro, if there be no bill of sale, or if it be not such a bill of sale as the act of 1817 requires. The seller may not have intended a fraud in the omission of any thing required by the act; and if so, there is no forfeiture of his title. In all such cases, however, the *onus* is upon the seller. It may be, that the reversioner is aware that no fraud was designed; and for that reason, simply, does not assert a title to the negro, until the evidence that no fraud was intended, is lost.

It may be asked, how is the reversioner to know of the sale? Perhaps not very readily in such a case as is now before us, where, if there was any sale, there was no change of possession. The act of Assembly, however, seems to contemplate cases, wherein the party who sells parts with the possession; and requires "the residence of the purchaser" to be inserted in the bill of sale, to the end that the reversioner may know where his property is when the term expires at which he may resume his title.

Where the title, as is here asserted, accrues by forfeiture, we cannot think that notice or knowledge to the reversioner is necessary, in order to bar his claim by the right of possession. This is the law in analogous cases. In an action of trover, a lapse of six years from *the conversion*, is, in *England*, a defence to the action. 2 *Philip's Ev.*, 136. And it is also there said, and also, at page 136, note 5, and the authorities there cited, "that it might have been different if the plaintiff had been prevented by the fraud of the defendant, from obtaining knowledge of what had been done. If no fraud, the case will not be altered by the circumstance, that the plaintiff did not know of the conversion within the period of six years from the commencement of the suit." See also, 2 *Greenl. on Evid.*, secs. 430 *and* 443.

If the defendant, or rather his intestate, acquired title to the negro in the manner stated, he might have asserted that title at

any time after its accrual, and, notwithstanding the death of *Walter S. Clarke,* without letters of administration having been granted upon his estate. He might have claimed the negro of any person who had the possession. The possession of the widow of *Walter,* if the negro was the property of her husband, was precisely such a possession as we find in the case of *Sewall vs. Fishwick,* 4 *H. & G.,* 393; and vested in her no title. In the language of the court in that case, it was " a fiduciary possession" to preserve the property for the benefit of the creditors and representatives. It was because of this that the administrator of *Fishwick* recovered in that suit; although, if a person claiming the negroes there in controversy, (whether he made title under *Miss Fishwick,* or in opposition to her claim,) had forborne to bring suit until administration was had upon her estate, length of time would have been a bar to his action. As before said, the instruction of the court upon this point was erroneous. The jury must have understood the court to instruct them, that in order to bar his claim, acquired as there mentioned, *Marriott* must have had three years previous notice of the sale and delivery by *Walter* to *Caleb Clarke.* Besides this, the instruction assumes the sale and delivery.

After the evidence in the preceding instructions, and while the law as laid down by these instructions, interposed, and as an the case was under argument before the jury, the court conceiving that the counsel for the plaintiff denied or misconceived explanatory instruction, stated to the jury, " that if they found the truth of the facts, as given in evidence by the witness, on the part of the defendant, and that there was, as stated by him, a sale and delivery of said negro woman, by *Walter* to his brother *Caleb Clarke,* and that such sale was made for the purpose of defrauding the creditors of the said *Walter,* that the interest and property of said *Walter* in the negro *Jemima,* thereby passed out of him, and that the right of the plaintiff to maintain the present action, was as effectually barred thereby as if the said sale and delivery had been *bona fide,* and for valuable consideration."

Here again, as in the first instruction, we find the creditors

of *Walter S. Clarke* introduced, with another feature, which we deem still more objectionable.    After saying, " if the jury believe the truth of the *facts*, as given in evidence by the witness on the part of the defendant," the instruction adds; " and that there was, *as by him stated*, a sale and delivery of the negro woman, by *Walter* to *Caleb Clarke*."    This, we conceive, must have been understood by the jury to mean, that they must believe there was such a sale and delivery as the defendant contended for, unless they disbelieved the witness; and as susceptible of such a construction is manifestly wrong.    At the same time, it submits to the jury to find from his evidence, that there was a sale from *Walter* to *Caleb*, which, for the reason assigned, we have heretofore condemned in the first instruction, and must, therefore, reject as error in this.

One further suggestion of counsel for the appellee, in the argument of the cause, demands a brief notice.

It was intimated, that the original bill of sale from *Marriott* to *Walter S. Clarke*, was not such a bill of sale as is required by the act of 1817, chap. 112, sec. 3.    But it is not pretended that the negro *Jemima* was a slave only for a term of years. In fact, the bill of sale indicates distinctly, that she was the slave for life of *Marriott*, who, by that instrument, undertook to transfer to the vendee an interest for a term of years, in the negro that thus belonged to him for life, and to the possession of which negro he was to be restored at the expiration of the term of years.    Certainly then, the vendor who gave the bill of sale, cannot be permitted to claim that the negro was again and immediately his property, acquired by his own act of noncompliance with the act of Assembly.    The proposition need only be stated, to show its own fallacy; and that such a disposition of a slave for life, is not within the provisions or the spirit of the act of 1817, chap. 112.

JUDGMENT REVERSED, AND
PROCEDENDO AWARDED.