## TYSON vs RICKARD.

1810.
JUNE.

Tyson
vs
Rickard.

APPEAL from *Baltimore* County Court. This was an action of *replevin*, brought by the appellee against the appellant. The defendant below, by his *avowry* justified the taking the goods, &c. being for one year's rent in arrear, amounting to $293 75, of a lot of ground leased by him to *William Belton.* Three pleas were pleaded to the avowry by the plaintiff, the *first* and *second,* of the statute of *usury,* and the *third,* in bar *de injuria sua propria;* to all which pleas there were replications, each tendering an issue, but to the replication to the last plea only, issue was joined, and upon that issue a verdict was given for the plaintiff. *Motion* by the defendant, that judgment on the verdict be arrested, because there was no issue joined in the pleadings. The court overruled the motion, and entered judgment on the verdict for the plaintiff.

1. The plaintiff and defendant at the trial, admitted the following facts, viz. That *William Belton* was, at the time of executing the mortgage to *John Hayes,* legally and rightfully possessed of the lot and premises hereinafter mentioned, for the residue of the term of 99 years in the assignment from *Alice Smith* and *John Smith* to *William Belton.* That a deed of mortgage from *William Belton* to *Robert Maxwell,* dated the 23d of June 1801, was duly executed, acknowledged and recorded, for all that moiety of lot No. 64, in *Baltimore* town, which had been assigned and transferred to *Belton,* by *Alice* and *John Smith,* on the 10th of May 1794 That the said mortgage deed was made for the purpose of securing the repayment of $2060, which had been lent and advanced by *Maxwell* to *Belton,* on a contract, whereby *Belton* had agreed to allow *Maxwell* an interest at the rate of *eighteen per cent per annum*

Where the defendant pleaded three pleas in an action of replevin, to which the plaintiff replied, and tendered an issue to each, but issue was joined to the replication to the last plea only, and upon that issue a verdict was given for the plaintiff. On motion in arrest of judgment.—*Held,* that the not joining issue on the first and second replications was healed after verdict.

B authorised an agent to borrow for him a sum of money on an interest of 15 per centum per annum, to be secured by mortgage on a house and lot. The agent applied to T for the money, in the name of B, and made him acquainted with the terms of the contemplated loan. T replied he was willing to advance the money, but would have nothing to do with a mortgage, but that he would purchase the property for the sum required, and would rent it to B for a rent equivalent to an interest of 15 per centum per annum, with privilege to B to redeem the property for the sum advanced, on paying up the rent.

These terms were acceded to by B, who executed a deed to T, and received from him a lease, reserving a rent equal to 15 *per centum per annum* on the sum advanced, payable quarterly, with a stipulation by T to reconvey the property at any time within five years, on payment by B of the sum advanced, with all arrearages of rent then due. *Held,* that on a question of usury it is the intention of the parties which gives character to the transaction, and no matter what the form, where the real truth and substance is a loan of money at more than an interest of six *per centum per annum,* no shift or device can take it out of the act of assembly against usury. That in the investigation of such questions, the original intention of the parties must often be come at by matter *de hors* the particular instrument of writing executed between them. That it should be left to the jury to decide upon the whole of the evidence, whether in the true contemplation of the parties, the transaction was a real sale by one, and a purchase by the other, or whether it was only colourable to hide a usurious loan. That a stipulation to repay the principal in money, is not necessary to constitute a loan; it is enough if the principal is secured, and not *bona fide* put in hazard; and it matters not what the nature of the security is, if it is sufficient. If the principal is secured, and the interest reserved is more than the law allows, it is usury. That every case of usury must depend on its own circumstances; and the intention of the parties, when it can be come at, and not the words used, must govern. That the legal construction of the lease from T to B, (no matter what it is,) cannot regulate the case; if it was not their intention that B might, by paying the principal at any time before the end of the first quarter, discharge himself from the rent due at the time of such payment, and that intention was matter for the jury.

on the money thus advanced, and that the payment of said interest, so to be allowed, was secured by a promissory note from *Belton* to *Maxwell*, which note was duly paid by *Belton* to *Maxwell*. That the principal sum of $2000, so advanced on the mortgage, not being paid at the time stipulated in the deed for that purpose, *Maxwell* urged *Belton* for repayment thereof, and that *Belton* applied to *James M'Evoy*, a broker in the city of *Baltimore*, and requested him to borrow a sum of money, from 3000 to 3500 dollars, on mortgage of the same property before conveyed to *Maxwell*, as well for the purpose of repaying the money lent to him by *Maxwell*, as also to supply other wants of his own, and authorised the said broker to allow an interest of *fifteen per cent per annum*, on the money he might be enabled thus to procure on mortgage. That *M'Evoy* applied to *Nathan Tyson*, (the defendant,) to loan the sum of $3500 to *Belton*, for which he should receive an interest of *fifteen per cent per annum*, and that the property so conveyed to *Maxwell* should be mortgaged to him to secure the repayment thereof. That on this application being made to him, the defendant immediately replied that he was willing to advance the money, but would have nothing to do with a mortgage, because he considered it a troublesome business, and gave *M'Evoy* an immediate and positive refusal to advance any money in that way; but said that he would make an absolute purchase of the property from *Belton* for the sum required, and would rent the property to *Belton* at a rent equivalent to an interest of *fifteen per cent per annum*, with a condition that *Belton* should have a right, when he pleased, (as *M'Evoy* then understood,) to purchase the property for the principal money advanced, on paying up the rent. That *M'Evoy* returned to *Belton*, and informed him of the terms on which the defendant would agree to advance the sum of $3500; that *Belton* thereupon authorised *M'Evoy* to close the contract on the terms proposed by the defendant, and expressed his warm approbation thereof, observing at the same time it would be more advantageous to him to obtain the money in this way, than to let the property remain on mortgage to *Maxwell*, as he would now only pay at the rate of an interest of *fifteen per cent* instead of *eighteen per cent*. That in pursuance of the agreement so made through *M'Evoy*, *Belton* authorised the defendant to apply the sum of $2000, part

of the $8500, so agreed to be paid for the purchase of the property, to the payment of the debt remaining due on the mortgage executed to *Maxwell*, and to receive from *Maxwell* an assignment of the mortgage. That the defendant paid the sum of $2000 to *Maxwell*, and *Maxwell* executed an assignment of the mortgage to him, in due form of law, by deed bearing date the 1st of April 1803. That the defendant paid the residue of the sum of $3500 to *Belton*, and *Belton* on the 1st of April 1803, executed a deed in due form of law to the defendant, purporting to transfer all his right and equity of redemption to the property mortgaged to *Maxwell*; and that the defendant duly executed, acknowledged, and delivered to *Belton*, a lease of the said property, bearing date the 1st of April 1803, reserving the annual rent of $525 over and above the annual rent reserved by the original lease from *Smith* to *Belton*, to be paid quarterly in four equal payments, with a covenant that *Tyson*, at any time within five years, on payment of the full sum of $8500, together with all arrearages of rent then due to him by *Belton*, would execute a release and assignment of all his interest and estate in the premises, to *Belton*—which lease has been duly recorded. That if the defendant had a legal right to make the lease to *Belton*, there was due to him, at the time of the distress, the sum of $375. That the mortgage to *Hayes* was previous to that made to *Maxwell*. The plaintiff, to support the issue on his part, proved by two witnesses, who were house carpenters, and who had examined the house and lot mentioned in the deed from *Belton* to the defendant, that the same were worth, and would sell for $7500, and by two other witnesses, one a master-builder, and the other a bricklayer, who had also made the same examination, that the house and lot were worth, and would sell for, $6500, and that the lot alone was worth about $4500. The defendant gave in evidence, that the house and lot were seven years ago worth $4500. The plaintiff then prayed the court to direct the jury, that upon the statement of facts and evidence, he the plaintiff was entitled to recover. But the county court, [*Nicholson*, Ch. J. and *Hollnigsworth*, A. J.] refused to give the direction as prayed, but did direct the jury, that to constitute usury there must be a lending and borrowing at a greater rate of interest than *six per centum per annum*. When these facts occur, and are establish-

1810.

Tyson
vs
Rickard

ed, no device or stratagem whatever can evade the sta-
tute. If the contract is in the shape of a bond, note,
mortgage or annuity, it matters not, the borrowing and
lending at an illegal interest contaminate the whole tran-
saction, and make it void. Where an annuity is sold, the
mere circumstance of giving the privilege of redemption
does not of itself constitute usury; but in the sale of an
annuity, whether there is or is not a privilege of redempti-
on, yet if the original contract was in fact a borrowing and
lending, and the sale of the annuity only a device to avoid
the statute, it is nevertheless usury. All the cases in the
books refer to the original intention of the parties; and if
in the case now before us, the jury should be of opinion that
the original transaction was a borrowing and lending, and
the deeds, executed in the particular form in which they
appear, merely as a device to evade the statute, then the
contract is usurious, and the deeds void. The circum-
stance of there being no covenant or bond by *Belton* for
the repayment of the money does not vary the case; he had
already given a pledge more than equivalent to the money
advanced, if the jury believe the testimony in the case as
to the value of the property. *Tyson* agreed to forbear in
making absolute his title to the thing pledged, for five
years, on condition of *Belton's* paying $525 annually, and
the obligation to redeem, though not formally expressed in
the deed, is virtually in the value of the house and lot.
The intention of *Belton* to borrow is palpable—it is admit-
ted in the case; that of *Tyson* to lend is not admitted; and
the fact of his intention to lend, and to use this form of
conveyance as a colouring, must exist in order to consti-
tute usury. It is a fact which the court cannot infer, as
not being within our province, but must be found by the
jury; and if they believe this fact, their verdict must be
for the plaintiff. The *plaintiff* excepted to the *refusal* of
the court to give the direction by him prayed, and the *de-
fendant* excepted to the *directon* which the court did give.

2. The plaintiff then insisted, that the money which the
defendant furnished to *Belton* was on loan, and not as mo-
ney furnished for the purchase of the lot of ground above
mentioned. The defendant then prayed the direction of
the court to the jury, that to constitute a loan it is neces-
sary for the jury to be convinced that it was the agreement
between *Belton*, and him the defendant, that the principal

was at all events to be repaid to him the defendant in money. But the county court directed the jury, that if the agreement between the parties was, that *Tyson's* title to the house and lot should become absolute at the end of five years unless the money was then repaid, and the original agreement contemplated an accommodation of money by way of loan by *Tyson* to *Belton* for that time, that then the method of satisfying *Tyson* the money originally advanced, did not alter the nature of the transaction. The defendant excepted. *Verdict* and judgment for the plaintiff, and the defendant appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*Martin, Harper* and *Purviance*, for the Appellant. 1. Upon the motion in arrest of judgment, and irregularity in the pleadings in not joining issues to the replications to the first and second pleas, and there being a verdict only upon the issue joined to the replication to the third plea, they cited *Bac. Ab.* tit. *Verdict*, (M.) 1 *Inst.* 227, and *Smith vs Raymond*, 1 *Day's Cases*, 189.

2. Upon the question of *usury* in the *bills of exceptions*, they cited the act of 1704, *ch* 69. *Murray vs. Harding*, 2 *W. Blk. Rep.* 862. *S. C.* 3 *Wils*, 396. *Lawley vs. Hooper*, 3 *Atk.* 278. *Green vs. Suasso*, 2 *Atk.* 231. *Irnham vs. Child*, 1 *Bro. Ch. Rep.* 94. *Spurrier vs. Mayoss*, 1 *Ves.* jr. 529. *S. C.* 4 *Bro. Ch. Rep.* 28. *Vin. Ab.* tit. *Usury*, (E.) *Bac. Ab.* tit. *Usury*, (C.) *Tate vs. Wellings*. 3 *T. R.* 531; and *Floyer vs. Edwards*, 1 *Cowp.* 115.

*Winder*, for the Appellee. 1. Upon the *first question* he cited *Bac. Abr.* tit. *Verdict*. (M) (X.) *Hill vs. Lewis*, 1 *Salk.* 133; and *Rex vs. Hayes*, 2 *Stra.* 844, 845.

6. Upon the *second question, Bac. Abr.* tit. *Usury*, (C.) *Hedgeborough vs. Rosenden*, 1 *Vent.* 254. *Morse vs. Wilson*, 4 *T. R.* 353. *Lowe vs. Waller*, 2 *Doug.* 740; and *Turner vs Bouchell et. al. (ante* 99.)

BUCHANAN, J. I perfectly agree in opinion, on both of the bills of exceptions, with the judges before whom this cause was tried in the court below.

On a question of usury it is the view, the intention of the parties, which gives character to the transaction, and no matter what the form, where the real truth and substance

is a loan of money—a lending on one side, and a borrowing on the other, at more than an interest of *six per centum per annum*; no shift or device can take it out of the act of assembly.

In the investigation of such questions the original intention of the parties must often be come at by matter *de hors* the particular instrument of writing executed between them, otherwise the act of assembly would be a dead letter; and in this case I think the court below did right in leaving it to the jury to decide upon the whole of the evidence, whether in the true contemplation of the parties, the transaction in question was a real sale by one, and a purchase by the other; or whether it was only colourable to hide an usurious loan; and in directing them to give a verdict for the plaintiff below, if they found it to be the intention of *Tyson* and *Belton*, the one to lend, and the other to borrow—the amount of the rent reserved being equal to an interest of *fifteen per centum per annum*.

As to the second bill of exceptions. A stipulation to repay the principal in money is not necessary to constitute a loan; it is enough if the principal is secured, and not *bona fide* put in hazard; and it matters not what the nature of the security is, if it is sufficient. As if a man borrows £20 to pay £10 for interest for one year, and pawns goods to the lender of the value of £100, on a stipulation in writing by the lender, to return the goods on payment by the borrower of £30, with interest thereon—this is an usurious lending, though there is no undertaking by the borrower to repay the principal. So in this case the principal sum advanced by *Tyson* was secured by the deed from *Belton*. The true ground is, not that there must be a stipulation to repay the principal at all events in money, but that it must in some way be *secured*, as distinguished from being put in hazard; but whether it is secured by pawn or pledge, or a conveyance of land, or is by agreement to be returned in lands, goods or money, is not material. If the principal is secured, and the interest reserved is more than the law allows, it is usury.

The position contended for, "that whenever it is in the power of a borrower of money to pay the principal within a limited time without interest, it is not usury," I conceive has no bearing upon this case; but is only applicable to cases in which the increased sum is stipulated for

1810.

Tyson
vs
Rickard

*nominæ penæ*, and there is no immediate reservation of interest, as in the case of a man lending £20, to receive £40 at the end of two years, or only £20 if paid at the end of one year, in which the payment of the smaller or larger sum is intentionally and expressly by the contract placed at the option of the borrower.

Every case of usury must depend on its own circumstances, and the intention of the parties, when it can be come at, and not the words used, must govern. [The judge here stated the facts, and then continued.]

The intention to negotiate a loan has been found by the jury, whose province it was to inquire into the meaning of the parties; and so far from the rent being reserved *nominæ penæ*, or its appearing to have been the intention of the parties that *Belton* might discharge himself of all rent by payment of the principal before any rent had accrued, that is, before the end of the first quarter, it seems clearly to have been their understanding and intention that he should not; for the stipulation in the lease is to reconvey on payment of the principal, together with all arrearages of rent, which shows that they contemplated an accrual of rent, and that the money was not to be paid before such accrual.

No matter, therefore, what the strict legal construction of the lease from *Tyson* to *Belton* is, that cannot regulate the case, if it was not the intention of the parties, that *Belton* might, by paying the principal at any time before the expiration of the first quarter, discharge himself from the rent up to the time of such payment; and that intention was matter for the jury.

With respect to the matter in arrest of judgment—The not joining issue on the first and second replications was healed after verdict, and the motion properly overruled.

GANTT and EARLE, J. concurred.

CHASE, Ch. J. As I differ from my brethren of the court, I am induced, from respect for their opinion, to communicate the reasons which impelled me to dissent from their judgment.

I concur in opinion generally, that every case of usury must be decided on its own circumstances.

To make a contract usurious there must be a loan of money, wares, merchandize, or other commodity, to be

paid or restored to the lender at a higher rate of interest than the act of assembly allows. To constitute usury it is essential that the thing lent is to be restored.

In this case it was a conditional sale of land and houses. A power was given to the vendor to avoid the sale, by the payment of the consideration money at any time within five years. A lease was made of the same property by the vendee to the vendor, reserving a sum of money equal to *fifteen per centum* on the sum for which the property was sold. The rent was payable quarterly. It was optional in the vendor to return the money or not; and if he had returned it within three months, he would have defeated the sale, and exempted himself from the payment of interest, or making any remuneration; so that, whether the money was to be returned or not, depended on the vendor, and on his opinion whether it would be most for his benefit to avoid the sale or note; it depended on the vendor whether any rent was to be paid. The inequality of price merely as such, cannot render the contract or sale usurious. The purchase was contingent, and defeazible by the vendor. The money was not to be repaid certainly, and at all events, nor was any rent or interest to be certainly paid. These ingredients are indispensably necessary to constitute usury.

It is the exclusive province of the jury to find facts; and it belongs to the court exclusively to decide the law arising on the facts found. It is necessary for the administration of justice, that the boundaries between the jurisdiction of the court, and the province of the jury, should be fixed. It appertains to the court to determine on the *legal* sufficiency of evidence to prove a fact in issue. As for instance, in an action of trover and conversion, conversion is the material fact to be found by the jury. Proof of a demand and refusal is evidence legally sufficient on which the jury may find conversion. To constitute a valid feoffment, livery is indispensably necessary. The proof of a deed of feoffment, and possession under it for a length of time, is legally sufficient for the jury to find livery. But proof of a demand would not authorise the jury *to find* the fact of conversion. So the proof of a deed of feoffment would not authorise the jury to infer livery, and find a feoffment, because the evidence is not legally sufficient. These are adduced as familiar instances, and of frequent

occurrence, to elucidate the subject. A lending is one of the ingredients to constitute usury, and the jury must find that fact, and that fact cannot be found without evidence legally sufficient to find it. The facts stated, negative a lending. *Tyson*, when applied to, refused to lend money on mortgage, but said he would purchase the property, and give a lease of it on a rent equivalent to the interest, at the rate of *fifteen per centum* on the purchase money. If a *bona fide* transaction, and there appears no evidence in the case to impeach it, the inequality of price cannot contaminate it; if it would, many of the purchases in and about *Baltimore* would be rendered suspicious. The rent to be paid being fixed, a certain *per centum*, with reference to the purchase money, cannot pollute it. Some of the witnesses prove the property worth $7500, others $6500, and others $4500. The aggregate amount of these sums, divided by three, will leave the sum of $6166, the price at which the property may be fairly estimated, which sum, at *nine per centum*, would produce $551. *Ten per cent.* is the lowest rate at which the rent of houses and lots is fixed. There must be some evidence to prove the fact of lending, and that what was done was a mere device to colour and disguise the transaction, which in itself was usurious. There is no evidence stated, legally sufficient, from whence the jury could infer a lending, and that the several conveyances were colourable, and devised to conceal a contract which was usurious. The jury cannot arbitrarily find facts, but there must be evidence in the case legally sufficient to warrant the deductions and finding of the jury.

For these reasons I am of opinion that the judgment of the court below ought to be reversed.

JUDGMENT AFFIRMED.