GORDON (COOPER v.). See Case No. 3,195.

## Case No. 5,607.
### GORDON v. DOOLEY.
[3 Hughes, 182.] [1]
Circuit Court, E. D. Virginia. May, 1879.

RENT CHARGE—USURIOUS CONTRACT.

Where a rent-charge of $1000 per annum is purchased for $12,500 in a state where six per cent. is the lawful rate of interest, and there is no intention or contract, direct or indirect, that it shall be considered a loan, and no provision in the deeds of assurance by which in the event of default the original purchase-money can be returned, nor any law in existence on the statute-book under which after default the pur-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

chase-money can be recovered back: *Held*, that the contract is not usurious, but valid, binding, and to be enforced in equity.

The bill sets out in substance the facts hereinafter detailed relating to a ground-rent sold by Snyder to Gordon. It avers that Asa Snyder became bankrupt on the petition of his creditors in 1877; that [James H.] Dooley was appointed his trustee in bankruptcy; that the ground-rent hereinafter mentioned was duly paid from July, 1866, to July, 1876, but that no part of the same has been paid since the latter date; that the trustee is receiving an annual rental from the property hereafter mentioned of $2700; that one Thomas Wilson is the beneficiary of a deed of trust from Snyder upon the same property, executed in October, 1876, and has filed his petition in this court, claiming to be paid out of said rents the arrearages of interest due to him upon a loan of $10,000 secured by said deed of trust. The bill maintains that the claims of all creditors of Snyder, and especially Wilson, are subordinate to the claim of the complainant. It therefore prays that a receiver may be appointed to take possession of the property and rent out the same; that the present trustee be directed to render an account of the rents he has received; and, amongst many other things, that the complainant may be paid the rent due him in arrear, and the rents to accrue as they fall due, in priority over all creditors and Wilson. The defendant, Dooley, and the petitioner, Wilson, resist the prayer of Gordon on the ground that his transaction with Snyder was usurious and void. Two deeds were received for record in the office of the hustings court of Richmond on the 7th day of September, 1866. One of them had been acknowledged on the 27th day of August, in that year, but bore date on the 1st day of July, by which Asa Snyder and wife, of Richmond, Virginia, conveyed to Douglass H. Gordon, of Baltimore, Maryland, in fee for $12,500, certain real estate on the corner of Cary and Tenth streets, in Richmond, described in the deed. The other deed had been acknowledged on the 29th and 31st of August and 4th of September, 1866; bore date the 2d day of July, 1866; and was a conveyance by the said Douglass H. Gordon and wife of the same property to the said Snyder, to have and to hold to Snyder, his heirs and assigns, etc., but subject to a perpetual annual ground-rent or rent-charge at the rate of one thousand dollars per annum, payable semi-annually, to be paid forever, with a covenant for entry for the purpose of distress if there should be default in making any payment of rent for six months; with further covenant nine months after default in paying any semi-annual rent, for reentry to take issue and profits for the satisfaction of rents in default; and with final covenant that if the rent shall be in arrear for five years then that the grantor, Gordon, shall have power of re-entry and to hold in absolute fee. The deed contains no other covenant.

By the laws of Virginia then in force (see Code 1860, c. 138, §§ 16, 20) it was provided that on a person bringing ejectment upon such a covenant as the last one mentioned in this deed, if the party in default shall tender to the party entitled to rent, or pay into court, all the rent and arrears at any time due, with interest and costs, all further proceedings in ejectment shall cease; or in case of a bill being filed in equity for relief against forfeiture of the land by the claimant, and of his being relieved in equity, he shall hold the land as he did before the proceedings began, without a new lease or conveyance. The property which was the subject of these deeds was a foundry, supposed at the time to be worth $50,000. Six or eight months before this transaction with Snyder, R. A. Lancaster, head of the firm of Lancaster & Co., bankers and brokers, of Richmond, had negotiated for Gordon a purchase of a ground-rent of $1000 a year on the Belle Isle property of Richmond for $12,500. Some six months before this transaction with Snyder, Gordon had requested Lancaster to negotiate the purchase for him of two other ground-rents of $1000 each, at the price paid for the Belle Isle purchase, and on the 6th of July, 1866, in a postscript to a letter of that date, Gordon had repeated that request to Lancaster.

Snyder says in his testimony that late in the summer or early in the fall of that year (it was in fact in July) he called on Lancaster's firm for the purpose of negotiating a loan. It seems they first proposed to sell him stocks or bonds on which he might raise money. Sundry propositions of the sort he declined. Afterwards they sent for him and told him they had $25,000 to invest in ground-rents. After taking some days for reflection he concluded to sell a ground-rent, and take $12,500 of the money the firm had for that form of investment. In due time deeds were drawn. The first deeds proposed to him were not satisfactory. Finally, the deeds which have been described were prepared, and were duly executed and recorded by the proper parties. There were no direct negotiations between Snyder and Gordon. All that transpired between Lancaster and Snyder in the negotiation was oral. All that transpired between Lancaster and Gordon on this subject was by letter—Gordon being in Baltimore. There is nothing in the correspondence of Lancaster with Gordon, showing that in this transaction Gordon had any other object or aim than to purchase a ground-rent; nothing to show that he himself sought to place a loan, or considered the transaction with Snyder as directly or indirectly a loan of money. Lancaster testifies that he never at any time submitted to Gordon a proposition from Snyder to borrow money. He had been informed by Gordon that he wanted the ground-rents for some special legacies. Lancaster testifies positively that the purchase of the ground-rent from Snyder was not intended by any one to be a shift, or device, or contrivance to

cover a loan of money, at a greater rate of interest than six per cent. per annum; that he had no authority to enter into such a transaction; that Gordon never had in the hands of his firm any sum whatever for investment at their discretion; that when proceeds of sales made by them for Gordon came into their hands and were left there, they had no authority whatever to invest them without Gordon's previous direction; that he never informed Snyder that his firm had any amount of Gordon's money for investment, and never offered to Snyder any sum of money or loan in behalf of Gordon. Lancaster repeats positively that the object of the deeds which were executed between Gordon and Snyder was to carry out in good faith the purchase of the ground-rent. Several letters from Gordon to Lancaster, written in the summer of 1866, were put in evidence voluntarily by Gordon, very few of which refer to the transaction with Snyder. They contain nothing to show that Gordon intended that transaction as a device to cover a loan, or himself regarded or treated the transaction as a loan. The letters are full of statements and inquiries, showing that Gordon was in the habit of buying negotiable paper, put by others into the hands of Lancaster for sale, at rates of discount greater than six per cent.; but they disclose no transaction usurious in the meaning of the law. These letters do not show that it was "the known practice" of Gordon to lend money on usury, under cover of devices in the form of sale, within the meaning of the ruling of the court in Douglass v. McChesney, 2 Rand. [Va.] 109. They prove no more than that he bought negotiable paper at rates of discount greater than six per cent.; and show that in one case he refused to buy such a note made directly to himself as payee, or made payable to the maker's own order, without an intermediate indorser.

Snyder testifies that he always regarded the transaction as a loan upon the property, similar to a mortgage; and he avers that Lancaster, from the character of his conferences with him, "must have understood thereby that I regarded it in the light of a loan; of course I can't tell what he felt." Lancaster testifies that he acted in the transaction as the agent of Snyder; that he did not act as the agent of Gordon; that his firm received a commission of $125 from Snyder; that Gordon paid the $12,500 in Baltimore on a draft of Lancaster & Co., and that the proceeds were placed to Snyder's credit in the banking house of Lancaster & Co., in Richmond, and were drawn thence by Snyder. Lancaster testifies that he took commissions on sales in all cases only from the seller, and never took them from the purchaser.

John A. Meredith and James Pleasants, for complainant.

W. W. Gordon, for defendant, and Isaac H. Carrington, for Thomas Wilson, who intervenes by petition.

HUGHES, District Judge. I think the foregoing statement embraces all the evidence in the case that can at all affect the decision of the question at issue, which is whether the two deeds, by which a rent-charge was nominally secured by Gordon upon the foundry property of Snyder, were really designed to cover, and did cover, a loan of $12,500 from Gordon to Snyder at the usurious interest of $1000, or eight per cent. per annum. If the intention of the parties to the transaction was in fact to cover up a usurious loan, or if the deeds are such as, carried by any practical means into operation according to their legal effect, do virtually provide for a loan, then the transaction is usurious and void under the law of Virginia as it stood at the date of the deeds. We have nothing to do here with the technical term "usury"; we have to do only with the terms of a specific law. Section 5, c. 141, of the Code of 1860, in force in 1866, provided that "all assurances made directly or indirectly for the loan of money at a greater rate than six per cent." shall be void. This is the law which rules the transaction between Gordon and Snyder. The deeds which then were executed are assurances. They do not provide directly for a loan of money. They in terms provide for the sale by Snyder to Gordon of a rent-charge of $1000 per annum, to be paid to Gordon in consideration of the sum of $12,500 paid down by Gordon to Snyder. If this transaction was in good faith the sale of a rent-charge, it is not usurious, though in effect the deeds provide for an annuity of $1000 to be collected on the original payment of $12,500 by Gordon to Snyder. "If the parties intended to make a usurious loan in the form of a sale, then, of course, the transaction will be illegal and void; but if it appear that a sale was really intended, then it is equally clear that the transaction is legal and valid. The difference between the two cases is, that the law allows the one and condemns the other; and though you cannot do what the law condemns, yet you may do what the law allows, even though the effect be precisely the same. Brockenbrough v. Spindle, 17 Grat. 36. A man may purchase bonds or negotiable paper in the market at any discount, whether they were manufactured for sale or not, and not be guilty of usury: Hansbrough v. Baylor, 2 Munf. 36; Taylor v. Bruce, Gilmer, 42; Whitworth v. Adams, 5 Rand. 333; and the same is held in many other cases. Nay, more, he may sell property greatly above its market value, knowing that the purchaser intends selling it again at its market value for the purpose of raising money, and the sale will not be usurious if it is a sale. Selby v. Morgan, 3 Leigh, 577; and Brockenbrough v. Spindle, 17 Grat. 21. But if such sale is accompanied by a loan of money as part of the transaction, the whole is usurious. Bank v. Stribling, 7 Leigh, 26." If the deeds between Gordon and Snyder, though not in form and legal effect providing for a loan, were accom-

panied by a contract or understanding in any form, oral or written, agreed to by both parties, that the amount of $12,500 paid for the rent-charge was to be treated as a loan at an annual interest of $1000, such side-contract would vitiate the main transaction, though it should not appear on the face of the deeds; or, though no such outside contract or understanding should be proved, yet, if the deeds themselves contain any clause or provision, or if they make an omission by virtue of which, under the laws of the country, a return of the principal money originally paid could be secured, then a loan would be thereby indirectly and substantially provided for, and the contract would be usurious.

It is clear from the evidence, that whatever idea Snyder may have had to the effect that he was negotiating a loan from Gordon, yet neither Gordon nor Lancaster entertained it. It is clear that the minds of Snyder and Gordon did not meet in mutual agreement on a contract for a loan in fact, through the sale of a rent-charge in form. These two men did not see each other. There was no direct communication between them. The whole business was transacted through Lancaster. Nor did Lancaster and Gordon meet personally in the course of the negotiation. It was carried on wholly by letters between them, and these letters do not show that a loan was either actually or impliedly the subject of their correspondence. In short, the evidence shows to demonstration that there was no mutual understanding between Snyder and Gordon to the effect that their transaction was to be in form the sale of a ground-rent, but in fact a loan. Such a contract or understanding not having been mutually agreed upon by the parties, by a common intention not expressed in the deeds, the only question left is, whether the deeds themselves by their tenor, provisions, and covenants, directly or indirectly, expressly or impliedly, by their actual provisions or by the omission of provisions, provide for or admit of a return or recovery of the $12,500 paid by Gordon for the rent-charge, through any means or method or possibility known to the law.

The counsel of Wilson, and of Dooley, the trustee in bankruptcy, contend that these deeds show a usurious transaction, and claim that this case is entirely similar to that of Scott v. Lloyd, first reported in 4 Pet. [29 U. S.] 205, and again reported 9 Pet. [34 U. S.] 418. Except in one particular this case is identical in the nature of its facts with that of Scott v. Lloyd, where a rent-charge of $500 per annum, purchased for $5000 paid down, was held usurious. In that case, as it is reported in 9 Peters, Chief Justice Marshall reviewed every case, American and English, which had then been reported, in which contracts not usurious in form, but claimed to have been usurious in fact, had been passed upon by the courts. The whole learning of this important and interesting

subject is there given in the lucid and conclusive manner usual with that judge. I refer for a citation and review of all cases in point to that exhaustive opinion, which leaves me nothing to do but to inquire what it decides, and compare that case of Scott v. Lloyd, with the one at bar.

The chief justice summed up the law as to annuities and ground-rents in the following language: "The ingenuity of lenders of money has devised many contrivances by which, under forms sanctioned by law, the statute of usury may be evaded. Among the earliest and most common of them is the purchase of annuities secured upon real estate. The statute does not reach them. not only because the principle may be put at hazard, but because it was not the intention of the legislature to interfere with individuals in their ordinary transactions of buying and selling, or other arrangements made with a view to convenience or profit. The purchase of an annuity or rent-charge, if a bona fide sale, has never been considered as usurious, though more than six per cent. profit be secured. Yet it is apparent, that if giving this form to the contract will afford a cover which conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity of disregarding form, and examining into the real nature of the transaction. If that be in fact a loan, no shift or device will protect it."

After thus explaining the law affecting the case, the chief justice proceeded to examine into the "real nature" of the transaction before him. As I have before said, the facts of the transaction in that case were identical in their character with those in this case. But there was one provision of the deed there which is not to be found in the deeds in this case. In addition to clauses similar to corresponding clauses in the deeds here, the deed there contained the following clause, Scholfield being in the relation of Snyder and Moore of Gordon to that transaction: Moore covenanted that if Scholfield, his heirs or assigns, "should at any time after the expiration of five years from the date of the deed, pay to said Moore, his heirs and assigns, the sum of five thousand dollars, together with all arrears of rent, he, the said Moore, his heirs and assigns, would execute and deliver any deeds or instruments which may be necessary for releasing and extinguishing the rent hereby created, which, on such payments being made, should forever cease to be payable." 4 Pet. [29 U. S.] 208. It is useless to show that this clause did provide for a return of the $5000 advanced in the beginning by Moore. The clause ex vi termini converted the sale and purchase of a rent-charge into a loan. In terms the transaction was to stand as the sale and purchase of a rent-charge for five years, and after that was to assume the character of a mortgage to secure a loan of $5000 at an

annual rent of $500. It is useless to say that on the principles heretofore stated in the foregoing pages, this provision of the deed brought the transaction between Scholfield and Moore into the category of usurious loans, and made what was in form the sale of a rent-charge in fact a loan secured by mortgage. Nor is it necessary to state how the supreme court decided the case, for, as a matter of course, it held the transaction to be usurious and gave order accordingly. It was not the fact that the rent of $500 reserved on ground purchased for $5000 was equivalent to an interest of ten per cent. per annum that was held to vitiate the transaction, but the fatal circumstance was the additional fact that a provision was made for a return of the purchase-money after a period, during which it was to carry ten per cent. in the form of rent.

In the case of Tyson v. Rickard, 3 Har. & J. 109, the subject was a rent-charge reserved at the rate of fifteen per cent. upon the sum paid for the purchase of it, where the contract embodied a provision allowing the vendor within five years to redeem the property on returning the sum borrowed with all arrearages of rent due, a case all fours with Scott v. Lloyd [supra]. Are these cases all fours with the one at bar? Plainly they are not. There is no such fatal clause in the deed of Gordon to Snyder reserving the rent as that which I have quoted from the deeds in the other cases. There is no provision whatever securing, looking to, or permitting the return of the $12,500 paid by Gordon for the rent-charge. Now I admit that, though no such provision actually appears in the deeds which passed between Snyder and Gordon, yet if there was an outside understanding or contract, oral or written, equivalent to it, by which they mutually agreed that the transaction should in fact be a loan, then the case would be the same as if such a stipulation were actually in the deed. But no such outside agreement is proved, and none such was made at all. I will go farther and admit that, if under the terms of the deeds between Snyder and Gordon, especially of the clause relating to a forfeiture of the fee, after five years of default, Gordon could, under the laws of Virginia, secure a return of the money paid for the purchase of the rent-charge, that legal power of recovery would have to be construed in connection with the deeds, and be treated as a part of the contract. But a court of equity in relieving against the forfeiture of the fee would not provide for a return of the purchase-money paid for the ground-rent. It would treat the 20th section of the 138th chapter of the Code of 1860 as part of the contract, and give relief against the forfeiture in accordance with its provisions. It could not, on any known principle of law or equity, return to Gordon his purchase-money of $12,500. This being so, and the deeds between Snyder and Gordon making no provision for the return of the $12,500 to Gordon, and the law giving him no power to recover it back, it follows that Gordon, by the transaction, parted with that purchase-money forever, and absolutely, and that the transaction was not directly or indirectly, actually or intentionally, by express provision or through any means known to the law, a loan within the terms of the 5th section of chapter 141 of the Code of 1860, making the taking of more than six per cent. on loans usurious, and is not void, but is valid and must be enforced in this case as against Wilson and other creditors of Snyder.