# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 24, 1922.

MARION R. BAILEY
VS.
PHILIP L. POE, ET AL.

*Francis I. Cross* and *W. Irvin Cross* for plaintiff.

*Preston & Field, Hershey, Machen, Donaldson & Williams* and *W. L. Haydon* for defendants.

BOND, J.—

This case must be treated as one upon a claim of Charles S. Bailey. It is quite clear that his brother, Marion R. Bailey, the complainant, was only a nominal title holder for Charles S. Bailey, interposed as a screen against some creditors of the latter. The whole transaction was carried through by Charles S. Bailey, primarily in his own interest, and the appearance of his brother's name in the pleadings must, for the purposes of this case, be disregarded.

Bailey (referring only to Charles S. Bailey from this point on) had secured a contract for the purchase of the old Metropolitan Savings Bank lot for $200,000, upon an initial payment made by him of $10,000, and an agreement to make a further cash payment of $25,000, and to give a mortgage to secure payment of the remaining $165,000.

Poe & Davis were, as Bailey learned, seeking larger office space, and Poe agreed with Bailey to take a portion of an issue of preferred stock of a new building company, on terms which would secure Poe & Davis new quarters at an especially favorable rental in a building planned for the site. It proved to be impossible to complete the financing of the new company, and that plan was dropped.

Then a proposal was made that Poe take a second mortgage on the site for $25,000, the amount of the second cash payment which Bailey was required to make on his purchase. Poe agreed that he would take a mortgage for $35,000 at 6 per cent., paying for it—"buying it," as he phrased it—$25,000; in other words, his firm was to receive a bonus of $10,000. His counsel advised him, however, that this would be no more nor less than a loan upon usurious interest, and so illegal on those terms, and, furthermore, impossible to execute because of the requirement of an affidavit that the consideration in the mortgage was as stated in it. The proposal of a second mortgage was then abandoned, and it was made quite clear to Bailey that this plan could not be considered; and the discussion was completely ended again.

After a short while the parties took up the question of a sale of Bailey's interests to Poe & Davies upon terms by which Bailey would have some chance of saving some of the money he had paid on his contract; and the working out of this proposal was entrusted to Mr. Machen as counsel for Poe & Davies. Long labor and discussion resulted finally in the absolute deed and the agreement which are in question now. Bailey proceeds upon the theory that the whole transaction is still a mortgage in the clothing of a sale, and upon that theory he claims an interest in the proceeds of a resale by Poe & Davies. Poe & Davies take the opposite view.

I think we are likely to go astray if, in studying this case, we treat it as one of concealed intention which we are to discover by such clues as have been found in the many cases on somewhat similar facts. The evidence seems to me to show a frank effort to recast the transaction to the extent of abandoning the essentials of a loan and mortgage, and making an absolute sale, although with incidents which, in some respects, at least, are similar to those which would have existed under a mortgage. The facts are before us, and the problem is one of analyzing them and testing them by the principles of law.

Of course, this effort to abandon the essentials of a loan and mortgage, and to make a sale, may be successful if carried through far enough, even though the interests of the parties are in some respect like those between mortgagor and mortgagee. On the other hand, it may be unsuccessful, and, however the parties may characterize the final product of their efforts, if it retains the essentials of a loan and mortgage as distinguished from a sale, it must be treated as a mortgage.

Simultaneously with the execution of the absolute deed to Poe & Davies, the parties executed a separate agreement, which provides:

That until the maturity of the mortgage to the Metropolitan Savings Bank for $165,000, Poe & Davies might, as they saw it, rent space in the old building on the property.

That Bailey should collect the rents and pay them over to Poe & Davies.

Bailey guaranteed a net rental of $2,100, in effect payable in semi-annual installments, from the property, over

and above the taxes and other public charges.

Any excess of rentals after the payment of taxes and other charges and the sum of $2,100 additional, was to be paid back to Bailey in the final settlement.

Poe & Davies were left free to resell when and as they pleased. If a resale were made prior to the maturity of the mortgage to the Metropolitan Savings Bank, then any amount left after payment out of it to Poe & Davies of $35,000, all carrying charges and any arrears in the $2,100 guaranteed net rentals, was to be paid to Bailey.

Proceeds of a resale after the time limited, however, were all to remain the property of Poe & Davies.

Nowhere in these papers is there any acknowledgment of the existence of a loan by Poe & Davies to Bailey; nowhere is there acknowledged any right in Bailey to redeem the property by payment of the money. On the contrary, in the expressions in the papers, the transaction is invariably described as a sale to Poe & Davies, with the contingent rights reserved to Bailey. And the predominating proof, I think, is decidedly to the effect that no liability in Bailey for repayment, other than as a result of the scheme just outlined, was contemplated by the parties, and that Bailey had no right to redeem. There was no such assured margin of value in the property as to show it to have been taken by way of security. Irrespective of personal liability of Bailey, within the meaning of the rule stated in Tyson vs. Rickard, 3 H. & J. 109, 114. Some of the incidents of the agreement, however, are not easily reconcilable with the theory of a sale; I cannot see the provision for the guaranteed net rental of $2,100 as in effect other than a provision of 6 per cent. interest on $35,000 for Poe & Davies while their money was out on the transaction. An obligation to pay interest, without any principal debt, is an anomaly which the mind shrinks from accepting as a fact. And, then, too, the obligation on Bailey (underlying this obligation for interest) to see taxes and other charges paid, is rather out of time with the theory of a sale by Bailey.

As counsel for the complainant argues, there seems to have been one and the same object pursued by Poe & Davies or their counsel throughout the dealings from the time of the suggestion of a second mortgage to the end of all the negotiations; that of buying a $35,000 6 per cent. security for $25,-000. Yet, after all, this can be accomplished within the law upon the basis of a straight sale, on conditions; and I conclude that it has been so accomplished in this case. I conclude that the parties deliberately abandoned the mortgage basis, and placed their relationship upon the basis of vendor and vendee as it is defined in the cases cited.

The objection that the complainant is not entitled to consideration in a court of equity, in any event, because of Bailey's concealment of the transaction from his creditors, would be an important one if decision of the point were necessary. I pass it, undecided, because the case is disposed of on other grounds.